# In the United States Court of Federal Claims

No. 04-99 C
(Filed: May 20, 2013)

```
**************************************
                                     *
KANSAS GAS AND ELECTRIC              *
COMPANY,  et al.,                    *
                                     *
                    Plaintiff,       *
                                     *
         v.                          *
                                     *
THE UNITED STATES,                   *
                                     *
                    Defendant.       *
                                     *
**************************************
```

## ORDER

On February 6, 2013, Plaintiffs Kansas Gas and Electric Company, Kansas City Power & Light Company, and Kansas Electric Power Cooperative, Inc., submitted a Bill of Costs ("BOC"), pursuant to Rule 54(d)(1)(A) of the Rules of the United States Court of Federal Claims ("RCFC"), 28 U.S.C. § 2412(a), and 28 U.S.C § 1920, in this spent nuclear fuel litigation.  The total amount sought, for such expenses as fees of the Clerk of Court, hearing and trial transcripts, deposition transcripts, and duplication of trial exhibits, is $41,626.43.

On February 13, 2013, Defendant filed a "Motion to Dismiss Plaintiffs' Untimely Bill of Costs," noting that the trial court had not awarded costs to Plaintiffs either in its original judgment or in its amended judgment and that Plaintiffs had failed to challenge the lack of an award of costs in their appeal to the United States Court of Appeals for the Federal Circuit.  More significantly, Defendant argued that, "even had plaintiffs been awarded costs, its [sic] bill of costs was filed outside the time period permitted by the court's rules, and thus its bill of costs should be dismissed as untimely."[1]  Def.'s Mot. to Dismiss Pls.' Untimely Bill of Costs ("Def.'s Mot.").  Specifically, Defendant asserted that Plaintiffs' BOC was due no later than January 30, 2013, but was filed "at least a week late."  Def.'s Mot. at 5.

Defendant filed a Corrected Motion to Dismiss Plaintiffs' Untimely Bill of Costs ("Def.'s Corrected Mot.") a few hours later on the same date, February 13, 2013,

---

[1] Defendant nevertheless requested the opportunity to challenge Plaintiffs' requested costs in the event that the court determined that Plaintiffs' BOC was filed properly and timely.

asserting that the due date for the BOC was February 1, 2013, and was thus at least five days late.  Defendant had inadvertently failed to recognize in its calculation of the due date that December 31, 2012, was a court holiday.

In their response, Plaintiffs acknowledged that their BOC "should have been filed three business days before it was" and moved for an enlargement of time, through February 6, 2013, *nunc pro tunc*, for its filing.

The issues before the court, therefore, are two-fold: whether to grant Plaintiffs' after-the-fact request for an enlargement of time for the filing of its BOC in the first place and, if so, whether to award costs to Plaintiffs.

For the reasons stated below, the court grants Defendant's motion to dismiss and denies Plaintiffs' motion for an enlargement of time.

I.    Background

This spent nuclear fuel case was filed on January 28, 2004, and assigned to the Honorable Christine O. C. Miller.  Judge Miller conducted the case through trial and, in an opinion issued on November 30, 2010, awarded the three Plaintiffs a combined total of $10,632,454.83, distributed proportionately according to their ownership interests in the Wolf Creek Generating Station, a single-unit nuclear reactor located in Coffey County, Kansas.  Judgment was entered by the Clerk of Court on December 1, 2010.

Plaintiffs appealed the judgment to the Federal Circuit in January 2011 and the United States cross-appealed.  The Federal Circuit issued its decision on July 12, 2012, affirming-in-part and reversing-in-part the judgment of the trial court.  *Kansas Gas and Electric Co. v. United States*, 685 F.3d 1361 (Fed. Cir. 2012).  In particular, the appellate court reversed the trial court's refusal to accept the Plaintiffs' methods for calculating overhead costs, but otherwise affirmed the remainder of the trial court's decision.  *Id*. at 1371.  The Government sought a panel rehearing of the decision on the overhead issue, but its petition for rehearing was denied on October 1, 2012.  The mandate of the Federal Circuit was issued and docketed on October 10, 2012.   The Federal Circuit, however, did not formally remand the case to the trial court.

Nevertheless, on October 11, 2012, the trial court ordered the parties to file a Joint Status Report ("JSR") by November 13, 2012, "proposing a schedule for further proceedings on remand."  In their JSR, filed October 26, 2012, the parties reported that "resolution of the parties' appeals is unambiguous regarding the appropriate course for this Court."  "[T]his Court need only issue a revised judgment that includes the overhead amounts disallowed for each plaintiff in its initial decision."  The parties then jointly calculated the additional damages that should be awarded to each of the three plaintiffs and proposed that a revised judgment should be entered accordingly.

Thus, on October 26, 2012, the trial court entered an order directing the Clerk of Court "to modify the judgment to reflect a revised judgment for plaintiffs in the amount

of $12,685,015.94," allocated among the plaintiffs in specified amounts.  On November 1, 2012, the Clerk of Court entered the amended judgment, allocating $5,961,957.49 apiece to Plaintiffs Kansas Gas & Electric Co. and Kansas City Power & Light Co. and $761,100.96 to Plaintiff Kansas Electric Power Cooperative.

Plaintiffs filed their BOC on February 6, 2013; Defendant filed its Motion to Dismiss and its Corrected Motion to Dismiss on February 13, 2013.  Plaintiffs filed their response, including their "Motion to Enlarge the Time for Filing Their Bill of Costs," on February 25, 2013.  Final briefing ended in March 2013.

On February 28, 2013, however, Judge Miller retired from the Court.  This case was assigned to the undersigned on April 10, 2013.

II.     Discussion

Judge Miller neither awarded nor denied the recovery of costs to Plaintiffs in either her initial judgment or her revised judgment.  Given that she did not make a determination regarding costs one way or the other, the Court here will not endeavor to divine what, if anything, she may have intended, but rather will decide this matter anew.

RCFC 54(d)(1) provides: "Costs – other than attorney's fees – *should be allowed* to the prevailing party to the extent permitted by law.  See 28 U.S.C. § 2412(a)." (emphasis added).  Section 2412, the Equal Access to Justice Act ("EAJA"), in turn generally provides, in relevant part, that a judgment for costs, not including attorney's fees, "*may* be awarded" to the prevailing party in a civil action against the United States. 28 U.S.C. § 2412(a)(1) (emphasis added).  The Federal Circuit has explained that a plaintiff "prevails" when it obtains actual relief on the merits that "'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"  *Neal & Co., Inc. v. United States*, 121 F.3d 683, 685 (Fed. Cir. 1997) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).  "[A] party may prevail without winning a complete victory or fully recovering its requested damages."  *Id*.  The Government here has not disputed that Plaintiffs qualify as prevailing parties.

Both Plaintiffs and Defendant acknowledge that the court has considerable discretion to award costs, although they disagree whether there is a presumption in favor of doing so.  "Although that standard connotes a degree of discretion in the trial court on the issue, the standard clearly favors the award of costs."  Pls.' Resp. to the Government's Mot. to  Dismiss at 2 (citing *First Fed. Sav. and Loan Ass'n. of Rochester v. United States*, 88 Fed. Cl. 572, 597 (2009).  "[T]his Court has wide discretion to decide whether or not to award costs and [] there is no presumption that costs should be awarded to the prevailing party in a case involving the United States."  Def.'s Reply in Support of its Mot. to Dismiss Pls.' Untimely Bill of Costs and Opp'n to Pls.' Mot. to Enlarge the Time for Filing Their Bill of Costs at 3 ("Def.'s Reply") (citing *Neal*, 121 F.3d at 687).

This Court is generally inclined to award costs in recognition of the hortatory language of RCFC 54(d)(1) ("Costs . . . should be allowed to the prevailing party . . .") and finds no compelling reason not to do so here.

Nevertheless, the overriding question is whether Plaintiffs should be allowed, *nunc pro tunc*, an enlargement of time for filing their BOC.  Their filing on February 6, 2013, was clearly out of time.  RCFC 54 provides that a BOC "must" "be filed within 30 days after the date of final judgment, as defined in 28 U.S.C. § 2412(d)(2)(G)."  RCFC 54(d)(1)(B)(i).  Section 2412(d)(2)(G) in turn provides that  "final judgment" means "a judgment that is final and not appealable."

Judge Miller's revised judgment was entered by the Clerk of Court on the docket on November 1, 2012.  It became final and not appealable 60 days after it was entered.  *See* Fed. R. App. P. 4(a)(1)(B); *see also Hernandez-Garcia v. Nicholson*, 485 F.3d 651, 652 (Fed. Cir. 2007).  As Defendant notes, 60 days after November 1, 2012, was December 31, 2012, but December 31, 2012, and January 1, 2013, were Court holidays; the final day therefore to file a notice of appeal would have been January 2, 2013.  With the 30 days allowed thereafter pursuant to RCFC 54 to file the BOC, Plaintiffs' deadline was February 1, 2013.  Plaintiffs' BOC was five days (three business days) late.

Plaintiffs argue, however, that "[t]he late filing of plaintiffs' bill of costs was the result of excusable neglect on the part of Wolf Creek's owners' counsel, and [enlargement] will not result in any prejudice to the government."  Pls.' Resp. at 5.  In support of the court's authority to grant its motion for an enlargement of time after the fact, Plaintiffs cite to RCFC 6, "Computing and Extending Time; Time for Motion Papers," which provides, "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  RCFC 6(b)(1).  Circumscribing the court's latitude with respect to certain deadlines, RCFC 6 further provides that the court "must not extend the time to act under RCFC 52(b), 59(b), (d), and 60(b)."  RCFC 6(b)(2).  It bears noting that EAJA itself does not provide any deadline for filing a BOC.

Plaintiffs, therefore, focus on whether their motion for enlargement meets the conditions of "excusable neglect."

Defendant, on the other hand, prior to weighing Plaintiffs' case for excusable neglect , would have the court in the first instance enforce RCFC 54(d)(1)(B)(i) strictly, parallel to the strict deadlines prescribed under EAJA:

> While the 30-day limit for filing a bill of costs in this Court is found in the Court's rules, and not in the EAJA statute, this Court has recognized that "one of the motivations behind RCFC 54(d)(1) was to synchronize the timing rules of the Court of Federal Claims with respect to recovery of fees and costs with the timing rules of EAJA."

Def.'s Reply at 5 (quoting *First Federal Sav. & Loan Assoc. v. United States*, 88 Fed. Cl. 572, 593 (2009). "[T]he former," it urges, "should be enforced as strictly as the latter." *Id*. at 6.

As the Government acknowledges, however, in 2010, in amendments to Rules 6 and 54 of the RCFC, the Court eliminated what had been explicit prohibitions against enlarging the time for filing a BOC.  It argues, nevertheless, that if the intent of the RCFC amendments were to permit a party to request an enlargement, after the fact, for filing a BOC, "[s]uch an exception would swallow the firm 30-day rule." *Id*. at 6.

The court agrees with Plaintiffs in its reading of the two rules as amended in 2010.  "Nothing in either RCFC 6 or RCFC 54 presents any ambiguity regarding this Court's authority to enlarge the time for filing a bill of costs.  RCFC 54 sets out the 30-day time frame.  And RCFC 6(b)(1) permits that time frame to be enlarged." Pls.' Reply at 2.

The issue, thus, is whether Plaintiffs' failure to meet the requisite BOC filing deadline is a matter of excusable neglect.  In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, the United States Supreme Court held that the determination of what constitutes excusable neglect, for purposes of a party's neglect of a deadline, "is at bottom an equitable one."  507 U.S. 380, 395 (1993).  The factors for consideration, "taking account of all relevant circumstances surrounding the party's omission," include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*.

The Court in *Pioneer* was specifically considering the "excusable neglect" standard under Bankruptcy Rule 9006(b)(1), but it construed the phrase under that rule as analogous to its meaning under Rule 6(b) of the Federal Rules of Civil Procedure ("FRCP").  *Id*. at 391-92.  The Court referred to "excusable neglect" under FRCP 6(b) as "an elastic concept." *Id*. at 392.  It specifically determined that the reach of the concept "is not limited strictly to omissions caused by circumstances beyond the control of the movant," *id*., although it noted that "inadvertence, ignorance of the rules, or mistakes construing the rules do not *usually* constitute 'excusable' neglect." *Id*. (emphasis added).

In *Cygnus Corp., Inc. v. United States*, 65 Fed. Cl 646 (2005), the Court of Federal Claims found that, post-*Pioneer*, "excusable neglect" did not require a "draconian" showing of unique and extraordinary circumstances, but rather set a relatively flexible equitable standard for extensions of time.  *Id*. at 649.  Nonetheless, the court in *Cygnus* observed that, "[a]lthough the post-*Pioneer* standard is not so strict as the government would have it, 'there still must be a satisfactory explanation for the late filing.'"  *Id*. (quoting *Gibbons v. United States*, 317 F.3d 852, 855 (8th Cir. 2003)).  In *Cygnus*, the court was construing whether the plaintiff had appropriately been granted an extension of time for the filing of a notice of appeal pursuant to Fed. R. App. P. 4(a)(5)(A).  It found the extension justified, in part, because "there had been an element

of confusion in the computation of time for taking an appeal" due initially to a delay in docketing by the Clerk's office.  Moreover, there was no indication of prejudice to the Government, no threat to judicial administration, nor any suggestion of bad faith.

This court adheres to the view of the court in *Cygnus* that the "unique or extraordinary circumstances" criteria for finding excusable neglect has been leavened by the balancing approach prescribed in *Pioneer*.

Among the factors prescribed in *Pioneer*, Plaintiffs' motion for enlargement founders on just one: the reason for the delay.  There is no demonstrated prejudice to the Government if the court were to consider the Plaintiffs BOC, there is little or no threat to judicial administration and efficiency (other than the delay in addressing this issue; Plaintiffs' BOC was only late by three business days), and there is no indication, much less suggestion, of bad faith.  Rather, Plaintiffs simply acknowledge that an associate attorney initially misconstrued the due date and counsel of record failed to double-check the associate's calculation.

Plaintiffs explain that the miscalculation stemmed from "both carelessness and the fact that the time for the underlying judgment to become final and not appealable could have run from two possible dates – the October 1, 2012 date of the Federal Circuit's denial of the government's petition for rehearing or this Court's November 1, 2012 judgment following the Federal Circuit's decision." Pls.' Resp. at 6.  Counsel's associate conflated the calculations and due dates, incorrectly counting 90 days for the filing of a petition for certiorari (as if that were the time period for determining "final and not appealable," given that the Federal Circuit had not technically remanded the case to the trial court), but mistakenly counted that 90 days not from the October 1, 2012, denial of rehearing, but from the November 1, 2012, docketing of the trial court's revised judgment.  "As a result, counsel mistakenly believed the bill of costs was due March 1, 2013.  Counsel acted in good faith, as he intended to file the bill of costs 25 days early, not 5 days late." *Id*.

In any event, counsel's mistake seems nothing more than garden-variety inadvertence or miscalculation.

The court therefore must grapple with the question whether the considerable weakness of Plaintiffs' explanation for its mistake is dispositive among the *Pioneer* factors or may be offset by the strength of its position vis-a-vis the other factors.  For example, in *Silivanch v. Celebrity Cruises, Inc*., 333 F.3d 355, 366 (2nd Circ. 2003), the court focused its consideration on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant."  The Second Circuit there held that the "equities will rarely if ever favor a party" who fails to follow a rule or deadline that is "entirely clear."  *Id*.  In *Graphic Commc'ns, Local 12-N v. Quebecor Printing Providence, Inc*., 270 F.3d 1, 5 (1st Cir. 2001), the First Circuit observed that "'[t]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import.'"  *Id*. (quoting *Hosp. del Maestro v. Nat'l Labor Relations Bd*., 263 F.3d 173, 175 (1st Cir. 2001) (quoting *Lowry v. McDonnell Douglas Corp*., 211

F.3d 457, 463 (8th Cir. 2000))).  The decisions in these circuits seem to suggest that, while *Pioneer* relaxed the standards for finding excusable neglect, there must ordinarily be something more to the reason for the delay than simple mistake.  In this court, the trial judge in *Cygnus* described that threshold as requiring "a satisfactory explanation." *Cygnus*, 65 Fed. Cl. at 649.  In *San Juan City College, Inc. v. United States*, 75 Fed. Cl. 540, 542 (2007), the trial court contrasted insufficient explanations such as office upheaval, the illness of an attorney's staff member, and an unusually heavy case load with situations in which counsel had become preoccupied with the serious illness of an infant child or spouse.

Yet, the Supreme Court in *Pioneer* explicitly noted that "'excusable neglect' may extend to inadvertent delays."  507 U.S. at 391-92.  "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not *usually* constitute 'excusable neglect.'"  *Id.* (emphasis added).  That statement clearly suggests that, in *unusual* circumstances, mere inadvertence might be excused.

In *United States v. Brown*, the Seventh Circuit affirmed a district court's extension of time for filing a late notice of appeal where a criminal defendant's counsel had missed the deadline by one day.  *United States v. Brown*, 133 F.3d 993 (7th Cir. 1998).  The court observed that, "[i]f the reason for the delay were the only factor to consider, or even the most important one, we might agree that the neglect in this case could not be excused."  *Id.* at 997.  The court noted that there was no prejudice to the Government due to the one-day delay and no indication of a lack of good faith.  "*Pioneer* makes clear that the standard is a balancing test, meaning that a delay might be excused even where the reasons for the delay are not particularly compelling."  *Id.*

In *Brown*, the court noted in particular the "relative inexperience of Brown's attorney," whose legal practice was generally within the Wisconsin state court system. Mr. Brown was, in fact, his only client in federal court.  Mr. Brown's counsel had mistakenly believed that weekends and holidays did not count towards the 10-day period for filing his criminal appeal, as under Wisconsin law.  Under the Federal Rules of Appellate Procedure that governed the appeal, however, weekend days would be excluded only if the prescribed period were less than *seven* days.  Furthermore, the district court judgment that had triggered the timetable for appeal had become final over the Thanksgiving holiday period.

The appellate court also observed that the Supreme Court in *Pioneer* had given "special consideration" to the factors of prejudice, efficient judicial administration, and good faith.  *Id.* at 996.  In addition, it noted that "dismissal of Brown's appeal would be a harsh sanction for a relatively minor legal mistake."  *Id.* at 997.

Here, Plaintiffs filed their BOC late by three business days, but there is no unusual gloss, as in *Brown*, to their mere inadvertence, such as counsel's inexperience in federal court or a holiday that confused the start of the 30-day countdown under RCFC 54.  Nor is the sanction here, inability to pursue their approximately $40,000 BOC claim

in a spent nuclear fuel case, comparable to a dismissal with prejudice of a late-filed criminal appeal.

The only confusion that Plaintiffs cite was the question on what date judgment in the case became final and not appealable, thus triggering the 30-day time for filing a BOC under RCFC 54: whether, because there was no actual remand, they should have counted 90 days from the Federal Circuit's October 1, 2012, denial of the Government's motion for panel rehearing on the overhead issue, when the Government's opportunity for certiorari would be over; or whether the RCFC 30-day period was to start running once 60 days – the time for appealing again to the Federal Circuit – had passed from the entry of the revised judgment in the trial court, that is, from November 1, 2012. Either way, however, Plaintiffs' deadline for filing their BOC had passed prior to their having filed it on February 6, 2013. Thus, it was not the start date of the RCFC 30-day period that was unusually confusing. It was Plaintiffs' mistaken application of the 90-day "cert" period for calculating the date judgment became final to the date of the trial court's entry of final judgment: in other words, garden-variety miscalculation.

III.    Conclusion

This court is sympathetic to Plaintiffs' plight, given RCFC's general direction that costs "should be" awarded to the prevailing party. The court, however, cannot find in this instance any compelling indication of the "something more" than simple mistake to warrant a finding of *excusable* neglect.

Accordingly, Plaintiffs' motion for an enlargement of time, *nunc pro tunc*, is denied. Defendant's motion to dismiss Plaintiffs' bill of costs is granted.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge